J. B. BILLARD v. THE BOARD OF EDUCATION OF THE CITY OF TOPEKA.

No. 13,481.   (76 Pac. 422.)

SYLLABUS BY THE COURT.

SCHOOLS AND SCHOOL DISTRICTS—*Lord's Prayer and Twenty-third Psalm Allowable.*   A public-school teacher who, for the purpose of quieting the pupils and preparing them for their regular studies, repeats the Lord's Prayer and the Twenty-third Psalm as a morning exercise, without comment or remark, in which the pupils are not required to participate, is not conducting a form of religious worship or teaching sectarian or religious doctrine.

Error from Shawnee district court; Z. T. HAZEN, judge.   Opinion filed April 9, 1904.   Affirmed.

*N. B. Arnold, G. C. Clemens,* and *David Overmyer,* for plaintiff in error.

*J. W. Gleed,* and *J. L. Hunt,* for defendant in error; *Gleed, Ware & Gleed,* and *D. E. Palmer,* of counsel.

The opinion of the court was delivered by

GREENE, J. :   The plaintiff sought by mandamus in the district court of Shawnee county to compel the board of education to permit his son Philip to reenter

one of the schools of the city from which he had been expelled for persistently disobeying its rules. Trial was had and judgment rendered in favor of the board, to reverse which plaintiff prosecutes this proceeding in error.

The plaintiff was a resident taxpayer in that part of the city of Topeka attached to the Quincy school for school purposes. His son Philip was a regularly enrolled pupil therein for the school year 1903–1904, and a regular attendant from the opening of the school until January 9, 1904, when he was expelled. The general opening exercises of the school consisted of repeating the Lord's Prayer and the Twenty-third Psalm, of reading selections from natural history — generally from Ernest Thompson Seton's stories — and of singing occasionally a selection found in "The Normal Music Course, Second Reader, Part 1." The pupils were not required to take part in these exercises, but they were required to refrain from their regular studies and preserve order during that period. The time spent in repeating the Lord's Prayer and the Twenty-third Psalm occupied from two to three minutes, the entire general exercises occupying about fifteen minutes.

The plaintiff made complaint that his son Philip was required to desist from studying and to remain orderly during these morning exercises, stating that he was conscientiously opposed thereto because such exercises were a form of religious worship. Thereafter Philip was excused from attending these exercises, and was permitted to enter the schoolroom fifteen minutes after the regular hour. For a time he so absented himself, but later entered the room with the other pupils and persisted in disobeying this rule. After repeated admonitions from his teacher and re-

proofs for his disobedience, and upon a positive refusal to obey, he was expelled until such time as he should feel that he could return and give obedience.

The plaintiff made a written request to the board of education that his son be permitted to enter the schoolroom at the regular hour, and that he 'be allowed to pursue his regular studies during the morning exercises. Upon receipt of such request, the board passed the following resolutions :

"*Resolved*, That we hereby approve and sustain the action of W. H. Wright, principal of Quincy school, in suspending Philip Billard from school on January 9 for a persistent violation of our rule requiring pupils to refrain from studying during general exercises ; and

"*Resolved*, That the pupil can be reinstated, as in other cases of suspension, by expressing his willingness to comply with the rules of the school."

A copy of these resolutions, together with the following communication, was sent to the plaintiff :

"In reference to the communication handed by one of your attorneys to the president of the board of education, permit me to say as follows : The communication was read to the board and ordered placed on file. In answer to the communication, the board of education passed a resolution, a copy of which is handed you with this letter. Yours very truly,

J. E. STEWART, Clerk."

The plaintiff thereupon instituted this action.

The basis of plaintiff's grievance is that the daily repetition of the Lord's Prayer and the Twenty-third Psalm is a form of religious worship, to which he and his son are conscientiously opposed ; that to conduct such exercise in the public schools, which are maintained at public expense and to the support of which plaintiff, as a taxpayer, is compelled to contribute,

is a violation of section 7 of the bill of rights, which reads as follows:

"The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any form of worship; nor shall any control of or interference with the rights of conscience be permitted. . ."

He also claimed that it was a violation of section 8 of article 6 of the constitution, which reads:

"No religious sect or sects shall ever control any part of the common-school or university funds of the state."

He further insisted that it is prohibited by section 6284, General Statutes of 1901, which is as follows:

"No sectarian or religious doctrine shall be taught or inculcated in any of the public schools of the city; but nothing in this section shall be construed to prohibit the reading of the Holy Scriptures."

There can be no question of the correctness of the legal premises of plaintiff. Both our constitution and statutes prohibit all form of religious worship or the teaching of sectarian or religious doctrine in the public schools. Section 7 of the bill of rights contains the following provision: "Nor shall any person be compelled to attend or support any form of worship." That is, no person shall be compelled to pay tithes or taxes to secure or maintain a place where any form of religious worship shall be conducted, or where any sectarian or religious doctrine is taught; nor shall any form of religious worship be conducted, or any sectarian or religious doctrine be taught, in any place supported by the imposition of taxes. Lest there might be some misunderstanding, the legislature, in providing for a system of public schools in cities of the first class, enacted section 6284, *supra*, which in positive

terms prohibits the teaching of sectarian or religious doctrine.

However, there is nothing in the constitution or statute which can be construed as an intention to exclude the Bible from the public schools.   Section 2 of article 6 of the constitution imposes upon the legislature the duty to "encourage the promotion of intellectual, moral, scientific and agricultural improvement, by establishing a uniform system of common schools." Every pupil who enters a public school has a right to expect, and the public has a right to demand, of the teacher that such pupil shall come out with a more acute sense of right and wrong, higher ideals of life, a more independent and manly character, a higher conception of his duty as a citizen, and a more laudable ambition in life, than when he entered.   The system ought to be so maintained as to make this certain.   The noblest ideals of moral character are found in the Bible.   To emulate these is the supreme conception of citizenship.   It could not, therefore, have been the intention of the framers of our constitution to impose the duty upon the legislature of establishing a system of common schools where morals were to be inculcated and exclude therefrom the lives of those persons who possessed the highest moral attainments.

As to the purpose of these exercises the teacher of the Quincy school testified as follows :

Ques. "What was the purpose of repeating the Lord's Prayer?   Ans. It is necessary to have some general exercise after the children come in from the play-ground to prepare them for their work.   You need some general exercise to quiet them down.

Q. "What was the purpose in repeating the Twenty-third psalm?   A. The same.

Q. "Your purpose was a religious one, wasn't it?

A. My purpose was to prepare the children for their work, to quiet them from the outside—

Q. "Do you say your purpose was not religious? A. Well, I don't know as I can change my opinion; it was religious to the children that are religious, and to the others it was not."

An examination of the evidence convinces us, as it convinced the learned judge who tried the cause, that the exercises of which plaintiff complained were not a form of religious worship or the teaching of sectarian or religious doctrine. There was not the slightest effort on the part of the teacher to inculcate any religious dogma. She repeated the Lord's Prayer and the Twenty-third Psalm without response, comment, or remark. The pupils who desired gave their attention and took part; those who did not were at liberty to follow the wandering of their own imagination. The only demand made of them was that during these exercises they should demean themselves in the same orderly manner required during their general studies.

The judgment of the court below is affirmed.

All the Justices concurring.